**IN THE COURT OF APPEALS OF IOWA**

No. 14-1179
Filed March 25, 2015

**VICTOR MANUEL VENTURA,**
    Petitioner-Appellee,

**vs.**

**JEANETTE ZUAZUA,**
    Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Johnson County, Paul D. Miller,

Judge.


        Jeanette Zuazua appeals the district court's custody decree.  **AFFIRMED.**


        Robert E. Peterson, Carroll, for appellant.

        David D. Burbidge of Johnston, Stannard, Klesner, Burbidge & Fitzgerald,

P.L.C., Iowa City, for appellee.


        Considered by Mullins, P.J., and Bower and McDonald, JJ.

**BOWER, J.**

Jeanette Zuazua appeals the district court's decree granting physical care of two children to their father, Victor Manuel Ventura. She claims the court erred in awarding physical care to Victor, and should have granted her physical care. In the alternative, she claims the district court should have granted the parties joint physical care. We find Jeanette has failed to preserve error on her claim for joint physical care. Further, upon our de novo review, we find no reason to change the district court's grant of physical care to Victor. We affirm.

Victor and Jeanette are the parents of B.V. and M.V., who were born in 2010 and 2011 respectively. The parties were never married. Victor is thirty-one years old. He currently lives in Chicago, Illinois, and lives with his sister, brother-in-law and their two children. He works fluctuating hours as a food supervisor on a cruise ship on Lake Michigan. Jeanette is twenty-two years old. She currently lives in Columbus Junction, Iowa, with her fiancé and his family. She works part-time for a temporary employment agency.

The parties separated in December 2012 after Jeanette and the children moved to Iowa City from Chicago. Victor planned to move to Iowa City too, but their relationship ended before he could move. For the next few months, Jeanette refused to tell Victor where she and the children were residing. Eventually, Victor contacted the Iowa Department of Human Services (DHS) for assistance in finding the children. The DHS connected Victor with the Johnson County Sheriff's Office, and a sheriff's deputy was able to locate the children.

On February 13, 2013, Victor filed a petition to establish custody and support. Victor requested physical care and joint legal custody. In her answer, Jeanette requested physical care and joint legal custody. On March 2, the parties entered into a stipulation concerning temporary custody and support. The parties agreed to temporary joint legal custody and temporary joint physical care. The court approved the stipulation on March 8.

The trial was held on March 5 and 6, 2014, and an order was filed on June 26. After a thorough review of the parties' claims, the district court determined placement of physical care with Victor would be in the best interest of the children. Jeanette appeals.

## II.	STANDARD OF REVIEW

We review child custody decisions de novo. *In re Marriage of Hynick*, 727 N.W.2d 575, 577 (Iowa 2007). We have a duty to examine the entire record and adjudicate anew the rights on the issues properly presented. *In re Marriage of Williams*, 589 N.W.2d 759, 761 (Iowa Ct. App. 1998). Despite our de novo review, we give strong consideration to the district court's fact findings, especially with regard to witness credibility. *Hynick*, 727 N.W.2d at 577.

## III.	ANALYSIS

### A.	Error Preservation

Jeanette claims the district court erred by failing to grant the parties joint physical care. Neither Jeanette nor Victor requested joint physical care at trial and, as a result, the district court did not consider a joint physical care arrangement in its custody order. Since Jeanette has raised this issue for the

first time on appeal, we decline to consider this issue. "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002).

### B.    Physical care

In matters of child custody, the first and foremost consideration "is the best interest of the child involved." *In re Marriage of Weidner*, 338 N.W.2d 351, 356 (Iowa 1983); *see also* Iowa R. App. P. 6.904(3)(o). The Iowa Code provides a nonexclusive list of factors to be considered in determining a custodial arrangement that is in the best interest of a child. Iowa Code §§ 598.41(3), 600B.40 (2013); *In re Marriage of Hansen*, 733 N.W.2d 683, 696 (Iowa 2007). We also look to the non-exclusive considerations articulated in *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974) (including the needs of the child, the characteristics of the parents, the relationship between the child and each parent, and the stability and wholesomeness of the proposed environment). The goal is to assure the child "the opportunity for the maximum continuing physical and emotional contact with both parents after the parents have separated . . ." Iowa Code § 598.41(1)(a). We seek to place the child in the environment "most likely to bring [the child] to health, both physically and mentally, and to social maturity." *Hansen*, 733 N.W.2d at 695.

On appeal, Jeanette claims we should reverse the district court's grant of physical care of the parties' two children to Victor. She claims, among other things, that she was the children's  caregiver and would provide the children

better care and stability than Victor. The district court concluded "placement of physical care with Victor and his continued living arrangement with his sister's family provides the most stability for the minor children and is the best situation to minister to the children's daily needs. This placement is in the best interest of the children." After our independent review of the record, we reach the same conclusion as the district court.

The parties' relationship has been marked by instability and financial troubles. Both parties claimed the role of primary caregiver to the children. The court found Victor to be the most stable and suitable parent. By living with his sister and her husband, Victor has a consistent and reliable source of care for his children. The extended family has lived at the Chicago residence since 2009 and they have plans to purchase a larger home[1]. Victor has held the same job for almost two years. The job allows Victor flexibility in attending to his children's needs. Conversely, we are troubled by the fact Jeanette's daycare provider does not have a driver's license or car insurance (it was revoked following a conviction for driving while intoxicated) and yet she drives with the Ventura children in the car, with Jeanette's knowledge. We are also troubled by Jeanette's decision to keep the children from Victor in December 2012. This act weighs against Jeanette's ability to foster a relationship between the children and their father. We find Victor is in a better position to care for the children and foster their relationship with Jeanette.

---

[1] Victor testified that extended family living together is common in his home country of Guatemala.

**C.     Appellate Attorney Fees**

Victor requests an award of appellate attorney fees for the total cost of this appeal.  An award of attorney fees is not a matter of right; it rests within our discretion.  *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005); *see also* Iowa Code § 600B.26.  We decide if an award is appropriate by considering the needs of the party seeking fees, the other party's ability to pay, and whether the appeal required a party to defend the decree.  *In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007).  Since neither Victor nor Jeanette clearly holds a superior financial position, we find both parties are responsible for their own attorney fees.  The costs are divided equally.

**AFFIRMED.**