**IN THE COURT OF APPEALS OF IOWA**
No. 15-1919
Filed August 17, 2016

**DANIEL LEE HENDERSEN,**
        Petitioner-Appellant,

**vs.**

**DANIELLE MARIE TIEMESSEN,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Chickasaw County, John J. Bauercamper, Judge.

        Daniel Hendersen appeals the district court's custody decree. **AFFIRMED.**

        Laurie J. Pederson of Pederson Law Office, Rockford, for appellant.

        Christopher F. O'Donohoe of Elwood, O'Donohoe, Braun & White, L.L.P., New Hampton, for appellee.

        Considered by Vogel, P.J., and Doyle and Bower, JJ.

**BOWER, Judge.**

Daniel Hendersen appeals the district court's decree granting physical care of a child, A.H., to the child's mother, Danielle Tiemessen. Upon our de novo review, we affirm.

## I.     BACKGROUND FACTS AND PROCEEDINGS

Daniel and Danielle are the unmarried parents of A.H., who was born in 2010. Daniel is thirty years old. He currently owns a home in Charles City. Daniel has an associate's degree and works for a pipe fitting and fabrication company. He normally works from 7:00 a.m. to 5:00 p.m. during the week and his work can require a substantial amount of travel. Danielle is twenty-six years old and lives in New Hampton. Danielle graduated from high school and worked in sales and marketing for four years until she was laid off shortly after A.H.'s birth. Danielle lives with her mother who runs a daycare center. Danielle works at the daycare part-time and also for a photography company. A.H. lives with Danielle in New Hampton, where he attends preschool.

In July 2014, Daniel filed a petition to establish custody, visitation, and child support, requesting joint legal custody and joint physical care. Danielle agreed to joint legal custody, but requested physical care. In September, the district court entered a temporary order granting the parties joint legal custody and Danielle physical care of A.H. The court granted Daniel visitation and ordered him to pay child support.

In October, the court held a custody hearing and both parties testified. The court entered an order in November granting the parties joint legal custody and Danielle physical care. Daniel now appeals from this order.

## II.    STANDARD OF REVIEW

We review child custody decisions de novo.  *In re Marriage of Hynick*, 727 N.W.2d 575, 577 (Iowa 2007).  We have a duty to examine the entire record and adjudicate anew the rights on the issues properly presented.  *In re Marriage of Williams*, 589 N.W.2d 759, 761 (Iowa Ct. App. 1998).  Despite our de novo review, we give strong consideration to the district court's fact findings, especially with regard to witness credibility.  *Hynick*, 727 N.W.2d at 577.

## III.    PHYSICAL CARE

In matters of child custody, the first and foremost consideration "is the best interest of the child involved."  *In re Marriage of Weidner*, 338 N.W.2d 351, 356 (Iowa 1983); *see also* Iowa R. App. P. 6.904(3)(o).  The Iowa Code provides a non-exclusive list of factors to be considered in determining a custodial arrangement that is in the best interest of a child.  Iowa Code §§ 598.41(3), 600B.40 (2013); *In re Marriage of Hansen*, 733 N.W.2d 683, 696 (Iowa 2007).  We also look to the non-exclusive considerations articulated in *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974) (including the needs of the child, the characteristics of the parents, the relationship between the child and each parent, and the stability and wholesomeness of the proposed environment).  The goal is to assure the child "the opportunity for the maximum continuing physical and emotional contact with both parents after the parents have separated."  Iowa Code § 598.41(1)(a).  We seek to place the child in the environment "most likely to bring [the child] to health, both physically and mentally, and to social maturity."  *Hansen*, 733 N.W.2d at 695.

On appeal, Daniel claims we should reverse the district court's grant of physical care of the parties' child to Danielle, as the court did not properly consider the legal standards for physical care in its order. We disagree. In granting Danielle physical care, the district court reasoned:

> Both parents have close, loving relationships with [A.H.] and each is an appropriate caretaker for the child.
>
> Prior to the separation of the parents, Danielle was his primary caretaker.
>
> When the parents separated in February of 2014, Daniel remained living in his Charles City home. His mother and other family members live in or near Charles City and assist him with child care as needed. He and [A.H.] have a close relationship with those relatives.
>
> In February of 2014, Danielle returned to New Hampton to live with her mother, Connie Elswick. She has a close relationship with her mother and other family members in the area. Connie operates a home day care on a full-time basis. Danielle has helped her mother supervise day care children to repay her mother for providing a temporary home for her and [A.H.]. [A.H.] enjoys the day care children and is also cared for there when Danielle was away. Danielle and [A.H.] continue to live in Connie's home, but she expects to be able to be able afford her own residence after this case is completed. It is located 2 blocks from the school [A.H.] now attends.
>
> . . . .
>
> The legal standards which the court must follow in deciding child custody cases are set out in Section 598.41, Code of Iowa, and as interpreted by the Iowa Supreme Court in the leading cases of: *In re Marriage of Winter*, 223 N.W.2d 156 (Iowa 1974) and *In re Marriage of Hansen*, 733 N.W.2d, 683 (Iowa 2007).
>
> Shared placement was not requested and was not practical, due to distance and separate school districts. [Danielle]'s move after separating from the [Daniel] was reasonable, due to her lack of ties to that community, including no relatives for support, no employment, and no housing. Since they were not married, [Daniel] was not obligated to assist her financially with her personal support. Returning to her nearby home community to live with her mother was not motivated by any intention to deny [Daniel] a relationship with their child.
>
> Both parents are well qualified as caretakers for the child and can be expected to support the other's relationship with [A.H.]. Gender of the parties is not a factor in deciding custody. The rather minor disputes that have occurred regarding visitation are the kind

that typically resolve once a final decree is filed and the parents adjust.

Historically, [Danielle] has been the child's primary caretaker, although [Daniel] has exhibited much more interest as the child has grown older and the parents have separated. [Danielle] has consistently put child care first ahead of career opportunities.

Although this is a close case, the court concludes that [Danielle] can best meet the child's needs.

Best interests of the child justify primary care placement with [Danielle].

We agree with the district court's reasoning and application of the applicable legal standards. We affirm the district court's order granting physical care to Danielle.

## IV.    APPELLATE ATTORNEY FEES

Danielle requests an award of $2000 in appellate attorney fees. An award of attorney fees is not a matter of right; it rests within our discretion. *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005); *see also* Iowa Code § 600B.26. We decide if an award is appropriate by considering the needs of the party seeking fees, the other party's ability to pay, and whether the appeal required a party to defend the decree. *In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007). Based on the disposition of this appeal and Daniel's superior financial position, we grant Danielle $1000 in appellate attorney fees and allocate costs to Daniel.

**AFFIRMED.**